

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ARCHITECTURAL IRON WORKERS' ) | |
| LOCAL NO. 63 WELFARE FUND, ) | |
| ARCHITECTURAL IRON WORKERS' ) | |
| LOCAL NO. 63 DEFINED CONTRIBUTION ) | |
| PENSION FUND, *et al.* ) | |
| ) | |
| Plaintiffs, ) | |
| ) | No. 07 C 0957 |
| vs. ) | |
| ) | Magistrate Judge Schenkier |
| IW&G, INC., ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

On February 20, 2007, plaintiffs filed this action under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132(g)(2), alleging that defendant IW&G failed to pay all contributions due from January 1, 2005 through September 30, 2006. Plaintiffs assert that contributions were due under a collective bargaining agreement ("CBA") between the Architectural and Ornamental Iron Workers' Union Local No. 63 ("the Iron Workers") and IW&G.

After being extended on one occasion, discovery closed as of April 21, 2008. Nearly four weeks later, on May 17, 2008, IW&G filed a motion for leave to file a third party complaint for indemnity against Glaziers, Architectural Metal and Glassworkers Local Union No. 27 Welfare and Pension Funds and Glaziers Union Local No. 27 (collectively, "the Glaziers Union"). IW&G did not attach a copy of the proposed third party complaint to the motion, and the motion itself did not disclose the basis for an indemnity claim against the Glaziers Union. However, during a hearing on

May 22, 2008, IW&G stated that IW&G sought to proceed against the Glaziers Union on a theory of common law (and not contractural) indemnity for any amount that IW&G may owe to plaintiffs.

On May 22, 2008, the Court denied the motion. The Court explained that the motion was untimely (coming after the close of discovery); that IW&G had engaged in undue delay in bringing the motion; and that adding new parties would lead to the reopening of discovery and thus would result in prejudice to plaintiffs by delaying the resolution of the case. On June 4, 2008, IW&G filed a motion to reconsider (doc. # 36), which we now address.

I.

At the threshold, we reject plaintiffs' argument that the motion to reconsider is untimely because it was not filed within ten days after the Court denied the motion to amend (Pls.' Resp. at 2). To be timely, a motion to reconsider must be filed within ten days after the ruling for which reconsideration is sought. In making their argument, plaintiffs ignore that when computing time periods of less than eleven days, the Court excludes Saturdays, Sundays and legal holidays. Fed.R.Civ.P. 6(a)(2). Using that method of computation, IW&G was required to file a motion to reconsider the May 22, 2008 order by no later than June 5, 2008. The motion was filed on June 4, 2008, and is therefore timely.

II.

We now turn to the merits of the motion. A motion to reconsider is not "at the disposal of parties who want to 'rehash' old arguments" that previously were made and rejected, *Young v. Murphy*, 161 F.R.D. 61, 62 (N.D. Ill. 1995), or to raise new arguments or evidence that could have been offered earlier. *Moro v. Shell Oil Company*, 91 F.3d 872, 876 (7th Cir. 1986). A motion for reconsideration has a more limited purpose: to correct a situation where the Court has "patently

2

misunderstood a party," has "made a decision outside the adversarial issues presented" to it, or has "made an error not of reasoning but of apprehension." *Bank of Waunake v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir. 1990).

IW&G's motion to reconsider largely falls into the "rehash" category, as IW&G recycles the same argument that it made unsuccessfully in seeking leave to file the amendment in the first place: that only at the end of discovery had it learned that this case presents an issue concerning whether work performed for IW&G by employees of Alumital Corporation, Total Window Installations, Inc. and Vitraulum Industries, Inc. was covered work under the CBA with the Iron Workers, for which IW&G was obliged to make contributions to the plaintiff funds instead of to the Glaziers Union. The facts do not support IW&G's assertion.

As of the time the suit was filed, plaintiffs had provided IW&G with an audit that disclosed the workers for whom contributions were alleged to be due and owing, the days on which the covered work was allegedly performed, the hours of work performed, and the amounts due for the work. During a status hearing on June 26, 2008, counsel for IW&G conceded that since that audit, plaintiffs have not added new workers or new hours of work to their claim for contributions. Thus, as of the time suit was filed, IW&G was aware of information that made it plain that plaintiffs were seeking contributions for work performed by employees of Alumital, Total Window, and Vitraulum. IW&G also knew or should have known whether it made contributions for any of that work to the Glaziers Union rather than to the plaintiff funds, and thus whether it should file a third party complaint against the Glaziers Union seeking indemnity for any contributions paid to the Glaziers Union that ultimately might have been found due and owing instead to the plaintiff funds. IW&G's attempt to do so only after discovery closed was untimely, reflected undue delay and would result

3

in prejudice. Those considerations form a sound basis for denying IW&G's belated attempt to add the Glaziers Union to the case.

### III.

In its reply, IW&G offers one piece of evidence, not previously cited, in aid of its motion to reconsider. IW&G says that in their initial status report, filed January 4, 2008, plaintiffs identified the principal legal issue in the case as "whether the principal contractor [IW&G] is responsible to pay fringe benefit contributions for its subcontractors who perform ironwork when the subcontractors are not signatory with Local 63," but in their recently filed summary judgment papers, plaintiffs pose the following question instead: "Is the work performed covered under the relevant CBA? If so, contributions are due" (Def.s' Reply ¶¶ 23-24). According to IW&G, "[i]t is this change in the legal issue the Plaintiffs are presenting to the this Court that prompted IW&G to file its Motion for Leave to File a Third-Party Complaint against the Glaziers Union in order for IW&G to seek indemnification from the Glaziers Union for any contributions the Glaziers Union received for work performed by Alumital Corp., Total Window Installation, Inc., and Vitraulum Industries, Inc. for the Project, if any, found by this Court to be covered by the Iron Workers collective bargaining agreement and not the Glaziers Union collective bargaining agreement" (*Id.*, ¶ 25).

We see no "change in the legal issue" presented. IW&G fails to acknowledge that plaintiffs' initial status report also disclosed that an issue that "may supersede the subcontracting clause is whether the work performed by Defendant's subcontractors is within the jurisdiction of Iron Workers' Local 63" (Pls.' Initial Status Report, 01/04/08, ¶ A(5)). Thus, plaintiffs' January 4, 2008, status report alerted IW&G that an issue in the case would be whether work performed by Alumital, Total Window, and Vitraulum was work that was covered by the Iron Workers CBA, so that

4

contributions would be due to the plaintiff funds – the very issue that IW&G now says it became aware of only at the close of discovery more than three months later. And, indeed, as we explained above, IW&G was put on notice of this issue long before January 2008: the audit, which IW&G had at the outset of the case, disclosed that plaintiffs claimed that the work done by employees of these companies was covered work for which contributions were due to the plaintiff funds. The "new evidence" offered by IW&G does not warrant reconsideration of our May 22, 2008 ruling.

Finally, we note that the absence of the Glaziers Union from this lawsuit will not adversely affect IW&G's ability to defend against the claims brought by the plaintiff funds. IW&G seeks to add the Glaziers Union as a third party defendant solely for indemnity, in the event that the plaintiff funds establish liability against IW&G. Thus, the absence of the Glaziers Union will not affect the ability of IW&G to offer evidence that the work for which the plaintiff funds seek contributions was not covered work under the Iron Workers CBA. To the extent that the Glaziers Union has any relevant evidence to offer on that score, IW&G may obtain it for trial through subpoena.

We recognize that, if the plaintiff funds prove that IW&G is liable for unpaid contributions (a question on which we offer no view), IW&G will be obliged to make contributions to the plaintiff funds for hours of work for which it may already have made contributions to the Glaziers Union. But, any such double payment would be the consequence of IW&G failing to make the contributions as contractually required in the first instance, and then compounding that error by not timely seeking to pursue a claim for indemnity against the Glaziers Union. That possibility does not persuade us that IW&G should be able to add the Glaziers Union to the case after discovery has closed, when IW&G could have done so long ago.

## CONCLUSION

For the foregoing reasons, IW&G's motion for reconsideration (doc. # 36) is denied.

**ENTER:**

_/s/ Sidney I. Schenkier_
**SIDNEY I. SCHENKIER**
**United States Magistrate Judge**

**Dated: July 17, 2008**